**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

Deandre Anderson,

               Petitioner,    Case No. 16-cv-12675

v.                                    Judith E. Levy
                                    United States District Judge

Shane Place,

                                      Mag. Judge Stephanie Dawkins
              Respondent.   Davis

_____/

**OPINION AND ORDER GRANTING RESPONDENT'S MOTION TO DISMISS [7], DENYING PETITION FOR WRIT OF HABEAS CORPUS [1], DENYING AS MOOT MOTION TO DEFER RULING [9], AND DENYING CERTIFICATE OF APPEALABILITY AND PERMISSION TO APPEAL *IN FORMA PAUPERIS***

Deandre Anderson ("Petitioner"), a Michigan Department of Corrections prisoner, filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Dkt. 1.) Petitioner challenges his convictions, following a bench trial in Alpena Circuit Court, for first-degree criminal sexual conduct, MICH. COMP. LAWS § 750.520b(1)(c), first-degree home invasion MICH. COMP. LAWS § 750.110a(2), and third-degree criminal sexual conduct, MICH. COMP. LAWS § 750.520d(1)(b). As a result of these convictions, Petitioner is serving concurrent sentences

of eighty-five months to fifty years and fifty months to twenty years. (Dkt. 1 at 1.)

This matter is before the Court on respondent's motion to dismiss. (Dkt. 7.) Petitioner filed a motion to defer the ruling on respondent's motion until he filed a response. (Dkt. 9.) Petitioner thereafter filed a response to the motion. (Dkt. 10.)

For the reasons set forth below, the Court grants respondent's motion to dismiss, and denies the petition for a writ of habeas corpus. The Court also denies as moot Petitioner's motion to defer, and denies a certificate of appealability and permission to proceed on appeal *in forma pauperis*.

I. **Background**

Petitioner was convicted after a bench trial on June 23, 2009 of home invasion and first- and third-degree criminal sexual conduct against Nichole Barilik and Bobbi Hanna. (Dkt. 1 at 1.)

At trial, Barilik testified that she and Petitioner had a romantic relationship, which she ended in mid-September 2008. After this, Petitioner continued to call her. On December 2, 2008, Barilik agreed to talk with Petitioner at Bobbi Hanna's house, where Petitioner was

staying. During the conversation, Petitioner slapped Barilik and grabbed her by the neck. Hanna heard the scuffle, and she told Petitioner to stop. Barilik then left.

Barilik testified that later that night, she woke up at approximately 5 a.m. to find Petitioner standing next to her bed, wearing only his boxer shorts. Petitioner touched her under her blanket. She told him to leave, but Petitioner pulled back the covers, climbed in her bed, held her wrists down, and sexually assaulted her.

Barilik went to the police station on December 8, 2008 to report that Petitioner was harassing her, but she did not mention the sexual assault. Barilik testified that she decided to pursue the rape charge when she heard that Bobbi Hanna had accused Petitioner of raping her.

At trial, Bobbi Hanna also testified. She testified that she met Petitioner on August 14, 2008, and became friends with him. He moved in with her in November 2008. On December 8, 2008, Petitioner broke off their romantic relationship, stating that he was in love with Barilik.

Two days later, on the night of December 10, 2008, Petitioner came home around 1:30 a.m. After Hanna went into her room and changed into her nightgown, Petitioner came into her room and

3

wrapped his arms around her. Hanna testified that she shoved Petitioner away and told him he needed to go to bed. Instead, Petitioner took his clothes off and sexually assaulted her.

After Petitioner left, Hanna called her friend Jessica Cohoon. Cohoon testified at trial that Hanna was hysterical on the phone, and told her that Petitioner raped her. Cohoon had a co-worker call the police and go to Hanna's house. Petitioner was arrested the next morning.

Petitioner, who represented himself at trial, maintained that any sexual contact he had with the women was consensual, and that the two women conspired to press charges against him after each woman found out that Petitioner had slept with the other.

The trial court found Petitioner guilty of the offenses detailed above. (Dkt. 8-13.) Following sentencing, Petitioner was appointed appellate counsel who filed an appellate brief raising a single claim: the trial court denied Petitioner his Sixth Amendment right to counsel when it failed to ensure that his waiver was knowing, voluntary, and intelligent by not informing him of the dangers of self-representation.

4

On October 26, 2010, the Michigan Court of Appeals issued an unpublished opinion affirming Petitioner's convictions. *People v. Anderson*, No. 293574, 2010 WL 4226641 (Mich. Ct. App. Oct. 26, 2010). Petitioner filed an application for leave to appeal with the Michigan Supreme Court. On June 28, 2011, the Michigan Supreme Court denied the application. *People v. Anderson*, 489 Mich. 971 (Mich. 2011) (table).

Over two years later, on October 17, 2013, Petitioner filed a motion for relief from judgment in the trial court, challenging the legality of his arrest and the weight of the evidence presented against him. The trial court denied the motion in a brief order dated October 18, 2013. (Dkts. 8-15, 8-16.)

On January 27, 2014, Petitioner filed a delayed application for leave to appeal with the Michigan Court of Appeals, which denied the application. *People v. Anderson*, No. 319898 (Mich. Ct. App. June 27, 2014). Petitioner did not appeal this decision to the Michigan Supreme Court. (*See* Dkt. 8-25.)

On September 23, 2015, Petitioner filed a second motion for relief from judgment with the trial court. The motion again challenged the legality of Petitioner's arrest, accused the police of improperly focusing

5

on just one suspect, asserted that the police obtained a statement from him in violation of his constitutional rights, and challenged the effectiveness of his appellate counsel. (Dkt. 8-17.)

On November 2, 2015, the trial court denied the motion, citing MICH. CT. R. 6.502(G)(2), which generally prohibits defendants from filing successive motions for relief from judgment. (Dkt. 8-18.) Petitioner filed a delayed application for leave to appeal in the Michigan Court of Appeals, and on May 5, 2016, the Michigan Court of Appeals dismissed the appeal pursuant to MICH. CT. R. 6.502(G)(2). *People v. Anderson*, No. 331561 (Mich. Ct. App. May 5, 2016). Petitioner did not appeal this decision to the Michigan Supreme Court. (Dkt. 8-25.)

On July 13, 2016, Petitioner filed a federal habeas petition, which raises two claims: (1) Petitioner is actually innocent, and (2) Petitioner was denied effective assistance of appellate counsel. (Dkt. 1.)

## II. Legal Standard

Respondent has filed a motion to dismiss. However, because the motion and the record before the Court includes a number of documents outside of the pleadings, the Court will treat the motion as a motion for summary judgment.

Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Smith v. Freeman*, 221 F.3d 846, 851 (6th Cir. 2000). The court may not grant summary judgment if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004) (citing *Skousen v. Brighton High Sch.*, 305 F.3d 520, 526 (6th Cir. 2002)).

## III. Analysis

Respondent argues that the petition is barred by the one-year statute of limitations. (Dkt. 7 at 10–15.) Petitioner argues he is entitled to equitable tolling because he is actually innocent and he diligently pursued relief after recovering from various medical issues. (Dkt. 10 at 3–4.)

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides a one-year period of limitation for a habeas petition

7

filed by a state prisoner seeking habeas relief from a state court judgment. 28 U.S.C. § 2244(d)(1). Under section 2244(d)(1)(A), the one-year limitations period runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."[1] The limitation period is tolled while "a properly filed application for State post-conviction or other collateral review . . . is pending." 28 U.S.C. § 2244(d)(2).

In this case, the Michigan Supreme Court denied leave to appeal on June 28, 2011. Petitioner then had ninety (90) days to petition for a writ of certiorari to the U.S. Supreme Court, which he did not do. Thus, the statute of limitations began to run on September 26, 2011, and expired one year later on September 27, 2012.

Petitioner filed his first post-conviction review motion with the state trial court on October 17, 2013, over a year after the statute of limitation had already expired. Because Petitioner's post-conviction motion was filed after the one-year limitations period expired, it did not toll or reset the limitations period. *McMurray v. Scutt,* 136 F. App'x 815, 817 (6th Cir. 2005) (citing *Vroman v. Brigano*, 346 F.3d 598, 602

---

[1] Section 2244(d) lists other events that trigger the statute of limitations, but none of these are relevant to Petitioner's case.

(6th Cir. 2003)). The same is true for Petitioner's second attempt to obtain state post-conviction review.

The petition is therefore time-barred unless Petitioner is entitled to equitable tolling. *Holland v. Florida*, 560 U.S. 631, 649 (2010). A petitioner is entitled to equitable tolling if he satisfies the burden of proving "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Id.* (internal quotation marks omitted); *Robertson v. Simpson*, 624 F.3d 781, 784 (6th Cir. 2010).

Petitioner argues that he is entitled to equitable tolling because he is actually innocent and diligently pursued his rights. The one-year statute of limitations may be equitably tolled based upon a credible showing of actual innocence under the standard enunciated in *Schlup v. Delo*, 513 U.S. 298 (1995). *McQuiggin v. Perkins*, ___ U.S. ___, 133 S. Ct. 1924, 1928 (2013). To prevail under this standard, a habeas petitioner must present the court with new, reliable evidence not presented at trial to establish that he is actually innocent of the crime charged. *See Ross v. Berghuis*, 417 F. 3d 552, 556 (6th Cir. 2005). The Supreme Court has cautioned that "tenable actual-innocence gateway

9

pleas are rare." *Id.* "[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Id.* (quoting *Schlup*, 513 U.S. at 329).

Petitioner states that "the only new evidence is the petitioners/defendant's testimony which wasn't given during the trial process; recantation of testimony by alleged victims and/or impeachment (polygraph exam was submitted)." (Dkt. 10 at 1.) He also asserts "a reasonable trier, juror, or fact finder would not have convicted me nor should you have confidence in the outcome of the trial in light of the testimonial evidence found within the transcript of record, which should raise more than enough reasonable doubt of guilt." (*Id.* at 4.) Petitioner then argues the witnesses should not have been believed, and the trial court erred in accepting their testimony to convict him. (*Id.* at 5–9.)

First, an attack on a witness's credibility is generally insufficient to establish actual innocence because a rational fact-finder may have chosen to believe the witness's testimony. *See Sawyer v. Whitley*, 505

10

U.S. 333, 349 (1992) (newly discovered impeachment evidence "will seldom, if ever," establish actual innocence); *In Re Byrd*, 269 F.3d 561, 577 (6th Cir. 2001) ("attacks on trial witness's . . . reliability . . . do not provide proof of 'actual innocence'").

Second, although Petitioner suggests that the victims recanted their testimony, the record provides no support for this allegation. Finally, Petitioner's own assertions of innocence based on what he would have testified to at trial are likewise insufficient to support his actual innocence claim, especially when the testimony includes no facts unknown to Petitioner at the time of trial. "A reasonable juror surely could discount [a petitioner's] own testimony in support of his own cause." *McCray v. Vasbinder*, 499 F.3d 568, 573 (6th Cir. 2007) (collecting cases).

In sum, there is no new, reliable evidence, and Petitioner's arguments do not demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him. Petitioner is therefore not entitled to equitable tolling. His habeas petition is untimely and must be dismissed. Accordingly, the Court grants respondent's motion.

11

## IV. Certificate of Appealability

Before Petitioner may appeal, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court denies relief on procedural grounds without addressing the merits, a certificate of appealability should issue if it is shown that jurists of reason would find it debatable (1) whether the petition states a valid claim of the denial of a constitutional right, and (2) whether the district court was correct in its procedural ruling. *Slack v. McDaniel*, 529 U.S. 473, 484–85 (2000). Having undertaken the requisite review, the court concludes that jurists of reason could not debate the Court's procedural ruling. A certificate of appealability will therefore be denied. Leave to appeal *in forma pauperis* is also denied because an appeal of this order could not be taken in good faith. 18 U.S.C. § 1915(a)(3).

## V. Conclusion

For the reasons set forth above, respondent's motion to dismiss (Dkt. 7) is GRANTED, and the petition for a writ of habeas corpus (Dkt. 1) is DENIED.

Because the Court did not rule on the petition for a writ of habeas corpus before Petitioner filed a response to the motion to dismiss, the motion to defer ruling (Dkt. 9) is DENIED as moot.

A certificate of appealability and permission for leave to appeal *in forma pauperis* are DENIED.

IT IS SO ORDERED.

| | |
|---|---|
| Dated: May 1, 2017<br>Ann Arbor, Michigan | s/Judith E. Levy<br>JUDITH E. LEVY<br>United States District Judge |

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on May 1, 2017.

s/Felicia M. Moses
FELICIA M. MOSES
Case Manager
